UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AELLIS O.,<br><br>   Plaintiff,<br><br>v.<br><br>KELLI MARIE CONNOR; JILL LEUER; and GOOGLE LLC,<br><br>   Defendants. | Case No.: 22-CV-200 JLS (WVG)<br><br>**ORDER (1) GRANTING RENEWED MOTION TO PROCEED *IN FORMA PAUPERIS* AND (2) DISMISSING WITHOUT PREJUDICE PLAINTIFF'S COMPLAINT**<br><br>(ECF No. 4) |

Presently before the Court is Plaintiff AEllis O.'s Renewed Motion to Proceed *in Forma Pauperis* ("IFP") ("IFP Mot.," ECF No. 4). Plaintiff, proceeding pro se, filed a complaint against Kelli Marie Connor, Jill Leuer, and Google LLC on February 11, 2022 ("Compl.," ECF No. 1). Having carefully considered Plaintiff's Complaint, Renewed IFP Motion, and the applicable law, the Court **GRANTS** Plaintiff's Renewed IFP Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint for the reasons that follow.

*IN FORMA PAUPERIS* **MOTION**

All parties instituting a civil action, suit, or proceeding in a district court of the United States, other than a petition for writ of habeas corpus, must pay a filing fee. 28 U.S.C. § 1914(a). An action may proceed despite a party's failure to pay the filing fee only

if the party is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a)(1). Section 1915(a)(1) provides:

> [A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding . . . without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such [person] possesses that the person is unable to pay such fees or give security therefor.

As section 1915(a)(1) does not itself define what constitutes insufficient assets to warrant IFP status, the determination of indigency falls within the district court's discretion. *See Cal. Men's Colony v. Rowland*, 939 F.2d 854, 858 (9th Cir. 1991) ("Section 1915 typically requires the reviewing court to exercise its sound discretion in determining whether the affiant has satisfied the statute's requirement of indigency."), *reversed on other grounds by* 506 U.S. 194 (1993). "An affidavit in support of an IFP application is sufficient where it alleges that the affiant cannot pay the court costs and still afford the necessities of life." *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015) (citing *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948)). "One need not be absolutely destitute to obtain benefits of the [IFP] statute." *Jefferson v. United States*, 277 F.2d 723, 725 (9th Cir. 1960). "Nevertheless, a plaintiff seeking IFP status must allege poverty 'with some particularity, definiteness[,] and certainty.'" *Escobedo*, 787 F.3d at 1234.

In his Renewed Motion, Plaintiff attests that he is transient and destitute with no steady income or employment. *See* IFP Mot. at 2–3, 5. Plaintiff claims that he earns "irregular and sporadic income from sunset beachside [photography] shoots for passing tourists." *Id.* at 4. He claims his only expenses are "daily subsistence" and a phone bill that "exceeds eighty five dollars a month." *Id.* at 2, 4. Plaintiff claims he has $83.70 in cash or in a bank account, and his only asset of value is a camera valued between $400 and $1,500. *Id.* Plaintiff also attests that he has no debts or financial obligations. *Id.*

///

///

The Court concludes that Plaintiff adequately has demonstrated that paying the $402 filing fee would result in his inability to afford the necessities of life. Accordingly, the Court **GRANTS** Plaintiff's Renewed IFP Motion.

## SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)

### I. Standard of Review

Because Plaintiff is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2). *See, e.g.*, *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2002) (per curiam) (holding 28 U.S.C. § 1915(e)(2) screening applies to non-prisoners proceeding IFP); *see also Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)). Under this statute, the Court must *sua sponte* dismiss a complaint, or any portion of it, that is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez*, 203 F.3d at 1126–27. "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citations omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

"When a court does not have jurisdiction to hear an action, the claim is considered frivolous." *Johnson v. E. Band Cherokee Nation*, 718 F. Supp. 6, 6 (N.D.N.Y. 1989). Moreover, "[t]he Court has an independent obligation to determine whether it has subject-matter jurisdiction." *Cox v. Lee*, No. CV-20-0275-PHX-DMF, 2020 WL 1904625, at *2 (D. Ariz. Apr. 17, 2020) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)); *see also Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.") (citation omitted). Pursuant to Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court ***must*** dismiss the action" (emphasis added). As the plain language of Rule 12(h)(3) suggests, this requirement is mandatory. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (noting that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived"; therefore, "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety" (citation omitted)).

Courts have a duty to construe a *pro se* litigant's pleadings liberally. *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). The district court should grant leave to amend if it appears "at all possible that the plaintiff can correct the defect," unless the court determines that "the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1130–31 (citing *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990)).

///
///
///
///
///
///

## II. Plaintiff's Allegations

In his Complaint, Plaintiff alleges he is a professional photographer operating out of southern California.[1] Compl. ¶ 1. Plaintiff specializes in boudoir photoshoots and operates under the brand name "Seaside Boudoir." *Id.* Plaintiff alleges that Defendant Kelli Marie Connor ("Connor") operates a boudoir photography and photographer education business in New Hampshire. *See id.* ¶ 9. Plaintiff contacted Connor regarding her photographer education business and received "a number of materials, documents, and information" from Connor, but Plaintiff did not pay to enroll in any of Connor's courses or receive coaching. *Id.* ¶ 10. Plaintiff claims that the materials Connor provided "are for use or adaptation as desired by the student or prospect." *Id.*

Plaintiff is a member of "online peer Facebook groups," and in June or July 2021 he "shared . . . a tip to another photographer who seemed to take unintended offense." *Id.*

---

[1] In the caption of his Complaint, Plaintiff provided his name as "AEllis O. DBA Seaside Boudoir." Compl. at 1. It is not clear to the Court whether the Party "AEllis O." refers to Plaintiff as an individual, or a business called AEllis O. The Court notes that, pursuant to this District's Local Rules:

> Only natural persons representing their individual interests in propia persona may appear in court without representation by an attorney permitted to practice pursuant to Civil Local Rule 83.3. All other parties, including corporations, partnerships and other legal entities, may appear in court only through an attorney permitted to practice pursuant to Civil Local Rule 83.3.

S.D. Cal. Civ L.R. 83.3(j). The Ninth Circuit has held that "[c]orporations and other unincorporated associations must appear in court through an attorney.'" *D-Beam Ltd. P'ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973–74 (9th Cir. 2004) (quoting *In re Am. W. Airlines*, 40 F.3d 1058, 1059 (9th Cir. 1994)). Therefore, Plaintiff cannot proceed pro se on behalf of a corporation, partnership, or other legal entity. To the extent Plaintiff seeks to assert claims on behalf of an entity pro se, those claims are **DISMISSED**. If Plaintiff elects to file an amended complaint asserting claims on behalf of an entity, Plaintiff must secure counsel or risk dismissal of this action.

The Court further notes that "[t]he normal presumption in litigation is that parties must use their real names." *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010); *see also* Fed. R. Civ. P. 10(a) (requiring the title of every complaint to "name all the parties"). "This presumption is loosely related to the public's right to open courts, and the right of private individuals to confront their accusers." *Id.* (citations omitted). If Plaintiff wants to proceed in this action under a pseudonym, he must seek leave of the Court to do so. Otherwise, any amended complaint must include Plaintiff's full real name in the title pursuant to Rule 10(a).

¶ 11. Connor, who Plaintiff alleges has some relation to this photographer, then "began a personal 'cancel culture' campaign against plaintiff across a number of platforms." *Id.* Plaintiff alleges that Connor "publish[ed] . . . known false statements alleging theft of Kelli Marie Connor's photographs by plaintiff to induce business from underage females." *Id.* ¶ 12. Plaintiff claims that Connor offered other people $50 to "repeat [Connor's] false narrative against plaintiff in a public review." *Id.* ¶ 15. As a result, Plaintiff alleges his advertising platforms "were flooded with false and hateful declarations which included widespread threats of violence, harm, and even threats against plaintiff's life, with repetitions of Connor's original false claims related to theft and pedophilia." *Id.* Plaintiff claims that Defendant Jill Leuer ("Leuer"), "who has idolized Connor," posted "statements she knew or had good reason to know were false" in photographer Facebook groups. *Id.* ¶ 23.

Plaintiff alleges that Connor's "malicious harassment, slander, and defamation" violates Defendant Google LLC's ("Google") published policies and procedures, but Google has "refused to enforce its own policies or remove the content [Connor and those she induced] have published." *Id.* ¶ 13. In response, Plaintiff "personally posted a negative review against Connor and her trade name, citing her misconduct, harassment, unlawful conduct, unlawful employment and discrimination policies and activities, and Google promptly removed the negative review." *Id.* ¶ 19. Plaintiff cites this incident as evidence of Google's "deliberate intent to further Connor's personal goals and agenda." *Id.* Plaintiff also claims that Google "ceased to display to consumer [sic] any related photos of plaintiff's business or products on the related Google business profile listing(s) for plaintiff." *Id.* ¶ 20.

Plaintiff "added restrictions on who could comment or contact him on his various platforms," but he claims that Connor's "harassment of plaintiff continued unabated." *Id.* ¶ 21. As a result, Plaintiff alleges he suffered "loss of economic and business opportunities, as well as actual lost revenue." *Id.* Plaintiff claims that Connor "was the influence who placed extreme pressure on a number of niche photography peer groups to expel, sever all

ties with, and otherwise ostracize plaintiff, depriving him of creative resources, networking, education, and referral opportunities." *Id.* ¶ 24.

Plaintiff initiated the present action on February 11, 2022, against Connor, Leuer, and Google. Plaintiff asserts claims for libel, conspiracy, breach of contract, federal false advertising and unfair competition, unlawful and unfair business practices in violation of California Business and Professions Code §§ 17200 *et seq.* ("UCL"), and unjust enrichment. *See generally* Compl.

**III. Analysis**

    *A.  Sufficiency of the Complaint*

        *1.  Libel*

In his first cause of action for libel, Plaintiff alleges "defendants' direct and indirect acts of libel, harassment, and commercial damages therefrom . . . have deprived [Plaintiff] of revenue and prospects." Compl. ¶ 6(A). Under California law, defamation occurs either through libel or slander. Cal. Civ. Code § 44. Libel is a false and unprivileged publication in writing or other fixed, visible representation "which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." *Id.* § 45; *see Med. Marijuana, Inc. v. ProjectCBD.com*, 46 Cal. App. 5th 869, 884 (2020). "The general rule is that the words constituting an alleged libel must be specifically identified, if not pleaded verbatim, in the complaint." *Med. Marijuana, Inc.*, 46 Cal. App. 5th at 884 (quoting *Kahn v. Bower*, 232 Cal. App. 3d 1599, 1612 n.5 (1991)). "[A] person who repeats a defamatory statement is generally as liable as the one who first utters it." *Flowers v. Carville*, 310 F.3d 1118, 1128 (9th Cir. 2002) (quoting 1 R. Smolla, Law of Defamation § 4:87, at 4–136.3 to –136.4 (2d ed. 2001)).

Although Plaintiff has attached several exhibits to his Complaint that purport to be screenshots of the statements at issue, several of these exhibits are illegible. *See, e.g.*, Ex. A-1 at 21; Ex. A-2 at 23. From what the Court can discern, only two statements in the exhibits purport to be made by Connor and Leuer, and the rest of the statements appear to

be made by individuals who are not parties to this action. The Court will first examine the sufficiency of Plaintiff's allegations as to the third-party statements, then those statements by Connor and Leuer, and finally Plaintiff's allegation that Google is also liable for these statements.

                        a.        Third-Party Statements

Generally, a person who repeats a defamatory statement is liable for their own statement. *See Flowers*, 310 F.3d at 1128 ("[E]ach repetition of a defamatory statement by a new person constitutes a new publication, rendering the repeater liable for that new publication." (quoting 1 R. Smolla, Law of Defamation § 4:87, at 4–136.3 to –136.4)). Plaintiff seeks to attribute statements made by third parties to Connor. Plaintiff claims that "a mob mentality began to take hold," and "Connor encouraged this behavior with repetition of her known false statements." Compl. ¶ 14. Plaintiff claims that "some parties who repeated Connor's false statements and claims without a knowledge of or contact with plaintiff apart from Connor's incitement repeated to plaintiff that Connor had offered them or their spouse $50 incentives or discounts in return for repeating her false narrative against plaintiff in a public review . . . . Countless individuals accepted this reported incentive[.]" *Id.* ¶ 15. Plaintiff has not alleged sufficient facts to attribute these third-party statements to Connor. Plaintiff has not specifically identified the "some parties" who Connor allegedly offered to pay to make statements regarding Plaintiff, or which statements those individuals actually made. These allegations are too vague and conclusory to attribute any of the statements made by third parties to Connor, and therefore the Court disregards those statements not made by Parties to this action.[2]

                        b.        Connor and Leuer's Statements

The Court next examines the statements made by Connor and Leuer. In the Complaint, Plaintiff generally claims that Connor "publish[ed] . . . known false statements

---

[2] Notwithstanding the Court's conclusion, Plaintiff does not address and the Court does not decide whether an agency theory can impute liability on a defendant for paying others to make allegedly defamatory statements.

alleging theft of Kelli Marie Connor's photographs by plaintiff to induce business from underage females," Compl. ¶ 12, and Leuer published "statements she knew or had good reason to know were false," *id.* ¶ 23. The Court first turns to the statement by Connor specifically identified in Plaintiffs exhibits, and then to the specifically identified statement by Leuer.

Plaintiff has specifically identified one statement purportedly made by Connor in a Google business review on his Seaside Boudoir business page. *See* Ex. A-1, ECF No. 1 at 21. Connor states that "'Aellis' aka 'Seaside Boudoir' aka 'Art by Aellis' has been STEALING from me consistently, across all of his platforms..." *Id.* (emphasis and ellipsis in original). There is a "More" option on this post seeming to signal that this is not the end of this statement, but this is the entirety of the statement Plaintiff included in the exhibit. *See id.* There is no specifically identified or verbatim statement by Connor that Plaintiff is attempting to "induce business from underage females," as he alleges in the Complaint. Compl. ¶ 12. In this statement, Connor does accuse Plaintiff of stealing from her; however, Plaintiff fails to state a claim for libel against Connor because Plaintiff has not adequately alleged this statement is false. Plaintiff does not allege in his Complaint that he is the photographer who took the photographs displayed on his website or social media sites to promote his business. In fact, Plaintiff alleges that Connor "makes it clear throughout her indoctrination efforts that all materials, methods, and practices she supplies to students and prospective students are for use or adaptation as desired by the student or prospect." *Id.* ¶ 10. Therefore, it is not clear to the Court whether Plaintiff was in fact displaying Connor's materials and claiming them as his own either explicitly or by implication.

In addition, Plaintiff's exhibits include other statements by individuals who are not parties to this action who claim Plaintiff stole their photographs. One exhibit is a statement by a different photographer who claims that Plaintiff "stole an image from my Instagram and posted it on his website." Ex. A-1 at 22. Nowhere in the statement does this individual claim that Plaintiff stole from Connor, but this individual does state that "there are about 20 of us in the Boudoir industry who he is harassing due to us coming forward to him about

stealing *our* content. [H]e is not a nice person, and the threats he has sent these women are scary." *Id.* (emphasis added). In another post, a different individual states, "[i]t is such a low and unprofessional act to steal *my* image and display it on your website. You did not take these images, nor have you worked as hard as us professionals to build our portfolio rather than take it." *Id.* at 26 (emphasis added). These comments do not parrot claims made by Connor, as Plaintiff alleges in his Complaint, but instead personally claim that Plaintiff has stolen their photographs and used these materials to promote his business. Plaintiff has not pleaded that he did not display the work of other photographers on his website or social media, and therefore his Complaint does not sufficiently allege Connor's statement is false.

Turning next to the allegations against Leuer, Plaintiff has specifically identified one statement purportedly made by Leuer in a Facebook post, but Plaintiff has not included any information about where on Facebook this statement was published. *See* Ex. A-3, ECF No. 1 at 30. Leuer's statement includes links to Plaintiff's websites and social media pages and states "Go check.. See if he has stolen any of your work." *Id.* In a reply to the post Leuer further states, "Hes got a fansly page full of nudes you have to pay for. I really hope he isnt in private groups stealing images of clients and selling them. That breaks my heart." *Id.* Once again, there is no specifically identified statement regarding underage women or pedophilia. Plaintiff fails to state a claim for libel as to this statement for the same reasons as above—namely, Plaintiff has not adequately alleged that the photos displayed are his own work.

The Court is not required to accept as true allegations that contradict exhibits attached to the Complaint or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citing *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)). Although Plaintiff has alleged in conclusory fashion that the reviews and comments by Connor and Leuer are "false statements," *see, e.g.*, Compl. ¶¶ 12, 15, he has not alleged that the photographs referenced in Connor and Leuer's statements

were taken by Plaintiff and are not works by other photographers that he explicitly or implicitly presented as his own to solicit business. Although Plaintiff claims Connor induced others to repeat her statements, the comments appear to be different individuals alleging theft of their own work by Plaintiff. Plaintiff has not adequately alleged these statements are false.

Because Plaintiff does not adequately allege the statements by Connor and Leuer are false, the Court **DISMISSES** this portion of Plaintiff's claim for libel.

### c. Google's Statements

Finally, Plaintiff alleges that "Google, when informed in detail of the situation and circumstances and the terms of service violations, refused to act to remove the public false declaration of defendant Connor and thus violated its own published policies, procedures, and terms of service." Compl. ¶ 18. Plaintiff claims that Google then "transitioned to the role of deliberate publisher of these acts of libel and waived any immunity claim(s) of an independent third party platform with its knowing and willful continued publication of these false declarations and libelous statements." *Id.*

This claim against Google suffers from the same issues as that Court noted *supra* Section III.A.1.b because Plaintiff has not adequately alleged that the statements at issue are false. Even if Plaintiff had adequately alleged falsity, however, his claim for libel against Google still fails. Through the Communications Decency Act, "Congress granted most Internet services immunity from liability for publishing false or defamatory material so long as the information was provided by another party." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122–23 (9th Cir. 2003). Here, the material was unequivocally provided by another party. Immunity extends even when a website operator is on notice that the posting is potentially defamatory. *Universal Commc'n Sys., Inc. v. Lycos*, 478 F.3d 413, 420 (1st Cir. 2007). Accordingly, Plaintiff has not stated a claim for libel against Google, and the Court **DISMISSES** that claim.

///

///

### 2. *Conspiracy*

Plaintiff's second cause of action is titled "Conspiracy." Plaintiff alleges that "Defendants conspired to deprive plaintiff of his constitutionally guaranteed right to be safe and secure in his person, property, and pursue lawful property interests by and thru lawful commerce." Compl. ¶ 6(B). Plaintiff claims that Defendants' actions violated 42 U.S.C. 1985(2). *Id.*

Section 1985(2) contains two clauses that give rise to separate causes of action. The first clause concerns access to federal courts, and the second clause concerns access to state or territorial courts. *See* 42 U.S.C. § 1985(2). To state a claim under section 1985(2), a plaintiff must allege that

> two or more persons in any State or Territory conspire [A] to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully and truthfully, or [B] to injure such party or witness in his person or property on account of his having so attended or testified . . . .

42 U.S.C. § 1985(2).

Plaintiff has not alleged that Defendants conspired to deny him access to either state, federal, or territorial courts. *See generally* Compl. Therefore, Plaintiff's allegations are insufficient to state a claim under section 1985(2), and the Court **DISMISSES** Plaintiff's claim for conspiracy.

### 3. *Breach of Contract*

Plaintiff's third cause of action alleges a breach of contract based on "Google's written and published policies and Terms of Service." Compl. ¶ 6(C). Plaintiff claims that "defendants refuse to comply with the terms of said contract(s), have themselves violated the express terms of these contracts, said violation(s) are intentional and willful, and these violations have caused plaintiff loss(es) as a result of these breaches." *Id.*

To establish breach of contract, the plaintiff must show that (1) a contract exists, (2) the plaintiff performed or had an excuse for nonperformance, (3) the defendant breached,

and (4) the plaintiff suffered damages. *See Reichert v. Gen. Ins. Co.*, 68 Cal. 2d 822, 830 (1968); *Wall St. Network, Ltd. v. New York Times Co.*, 164 Cal. App. 4th 1171, 1178 (2009); *Nationwide Mut. Ins. Co. v. Ryan*, 36 F. Supp. 3d 930, 938 (N.D. Cal. 2014).

To the extent Plaintiff asserts a breach of contract claim against Connor or Leuer, Plaintiff has not alleged he is a party to any contract with Connor or Leuer. *See Ken Tu v. Dongbu Ins. Co.*, No. 17-CV-03495-JSC, 2017 WL 8294059, at *1 (N.D. Cal. July 24, 2017) ("A breach of contract claim necessarily begins with a contract."). Therefore, the breach of contract claim against Connor and Leuer must be dismissed. *See, e.g.*, *Barnhart v. Points Dev. US Ltd.*, No. 216CV02516CASEX, 2016 WL 3041036, at *3 (C.D. Cal. May 25, 2016).

As to Plaintiff's claim for breach of contract against Google, this claim also fails. To properly plead breach of contract, "[t]he complaint must identify the specific provision of the contract allegedly breached by the defendant." *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 930 (N.D. Cal.2012) (citing *Progressive West Ins. Co. v. Super. Ct.*, 135 Cal. App. 4th 263, 281 (2005)). Plaintiff generally references Google's Terms of Service, but he fails to identify what provision Google purportedly breached. Even if Plaintiff had identified a specific provision of the Terms of Service that Google allegedly breached, however, the Court would still find that Plaintiff failed to state a claim for breach of contract against Google. Other courts examining websites' terms of service have found that, "while these provisions place restrictions on users' behavior, they do not create affirmative obligations." *Young v. Facebook, Inc.*, No. 5:10-CV-03579-JF/PVT, 2010 WL 4269304, at *3 (N.D. Cal. Oct. 25, 2010); *see also Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017) (dismissing breach of contract claim against Facebook based on alleged violation of terms of service because the court found provision does not create affirmative obligations for Facebook). Therefore, Plaintiff has not sufficiently pleaded a breach of contract claim against Google based on the website's Terms of Service.

Accordingly, the Court **DISMISSES** Plaintiff's claim for breach of contract.

### 4. *Federal False Advertising and Unfair Competition*

Plaintiff's fourth cause of action alleges a violation of the Lanham Act. Compl. ¶ 6(D). Plaintiff claims that "Defendants have published deliberate false and misleading representations concerning plaintiff AEllis' personal and professional activities in commerce." *Id.* Plaintiff alleges that "defendants' false claims have deceived and are very likely to deceive consumers regarding plaintiff's professional practices[.]" *Id.*

Section 43(a) of the Lanham Act provides for civil liability against

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
> . . .
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]

15 U.S.C. § 1225(a). To bring a false advertising suit under the Lanham Act, a plaintiff must show "that a statement made in a commercial advertisement or promotion is false or misleading, that it actually deceives or has the tendency to deceive a substantial segment of its audience, that it's likely to influence purchasing decisions and that the plaintiff has been or is likely to be injured by the false advertisement." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 828 (9th Cir. 2011) (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)). The Federal Rule of Civil Procedure 9(b) heightened pleading standard applies to a false advertising claim under the Lanham Act that is "grounded in" or "sounds in" fraud. *See Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.").

Even setting aside that Plaintiff does not adequately allege these statements are false, *see supra* Section III.A.1.b, Plaintiff has failed to allege that the statements at issue were used in a commercial advertisement or promotion. *See generally* Compl. Furthermore,

Plaintiff's conclusory allegations do not meet the heightened pleading standard of Rule 9(b). Therefore, the Court **DISMISSES** Plaintiff's fourth cause of action.

5. *UCL*

Plaintiff's fifth cause of action alleges Defendants violated Cal. Bus. & Prof. Code § 17200. Compl. ¶ 6(E). Plaintiff claims that "Defendants have published deliberate false and misleading representations concerning plaintiff AEllis' personal and professional activities in commerce." *Id.* Plaintiff's UCL claim is tethered to the allegations in his other claims. As those claims fail, so too does Plaintiff's claim for violation of the UCL. *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1095 (C.D. Cal. 2015) ("Where the predicate claims on which a plaintiff's UCL claim are based fail, the UCL claim fails as well.") (citations omitted). Therefore, the Court **DISMISSES** Plaintiff's UCL claim.

6. *Unjust Enrichment*

Plaintiff's final cause of action, which appears to be only against Google, alleges that, "[t]o the extent that Google received advertising dollars and revenue from defendant(s) Connor or Leuer for its deliberate bias in publications . . . Google did benefit from its illegal conduct . . . and plaintiff is entitled to restitution." Compl. ¶ 6(F). As an initial matter, unjust enrichment is not a standalone cause of action under California law. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citations omitted). However, construing Plaintiff's cause of action as a quasi-contract claim for restitution, *see id.*, the Court has already found that Plaintiff has not pleaded sufficient facts to state his other claims, and his unjust enrichment claim is derivative of those same facts. Namely, Plaintiff has not pleaded any benefit unjustly received by Google as a result of, *inter alia*, fraud or mistake. Accordingly, the Court **DISMISSES** Plaintiff's unjust enrichment claim.

**B.** *Subject-Matter Jurisdiction*

Based on the foregoing, the Court is not satisfied that it has subject-matter jurisdiction over the claims Plaintiff is asserting. "Federal district courts are courts of limited jurisdiction that 'may not grant relief absent a constitutional or valid statutory grant of jurisdiction' and are 'presumed to lack jurisdiction in a particular case unless the

contrary affirmatively appears.'" *Cooper v. Tokyo Elec. Power Co.*, 990 F. Supp. 2d 1035, 1038 (S.D. Cal. 2013) (quoting *A-Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003)). Generally, subject-matter jurisdiction is based on the presence of a federal question, *see* 28 U.S.C. § 1331, or on complete diversity of citizenship between the parties, *see id.* § 1332.

Plaintiff claims subject-matter jurisdiction on the basis of diversity jurisdiction, pursuant to which "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). However, Plaintiff alleges that he is a California citizen, *see* Compl. ¶ 1, and Google is "headquartered in Mountain View, California," *id.* ¶ 4. Accordingly, it does not appear that Plaintiff and Defendants have "complete diversity" such that this Court can exercise diversity jurisdiction over this matter. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (explaining that 28 U.S.C. § 1332(a) requires "complete diversity," and "thus applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant").

Nor does it appear that this Court can properly exercise federal question jurisdiction over this matter. Pursuant to 28 U.S.C. § 1331, courts have jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." However, "[s]ection 1331 . . . does not independently create subject matter jurisdiction; the suit must 'arise under' the Constitution or some other specific section of the United States Code." *Watson v. Chessman*, 362 F. Supp. 2d 1190, 1199 (S.D. Cal. 2005). Here, Plaintiff asserts claims for various violations of state law, including libel, breach of contract, UCL, and unjust enrichment. *See generally* Compl. Plaintiff asserts claims for conspiracy and false advertising under federal law, *see generally id.*, but the Court has found that Plaintiff failed to state claims for conspiracy or false advertising, *see supra* Sections III.A.2 & III.A.4.

Because the Court has dismissed Plaintiff's conspiracy and Lanham Act claims, there is no longer a federal question basis for this Court's jurisdiction. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law

claims against Defendants. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." (footnote omitted)); *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) ("A court may decline to exercise supplemental jurisdiction over related state-law claims once it has 'dismissed all claims over which it has original jurisdiction.'" (citing 28 U.S.C. § 1367(c)(3))).

Accordingly, this Court additionally lacks subject-matter jurisdiction over Plaintiff's Complaint. Thus, dismissal is warranted pursuant to 28 U.S.C. § 1915(e)(2).

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Plaintiff's Renewed IFP Motion (ECF No. 4) and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim and lack of subject-matter jurisdiction.

Plaintiff **MAY FILE** an amended complaint curing the deficiencies noted above within thirty (30) days of the date of this order. Any amended filing must be complete in itself, without reference to Plaintiff's original Complaint. Any claim not re-alleged in Plaintiff's amended complaint will be considered waived. *See* S.D. Cal. Civ. L.R. 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *see also Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not realleged in an amended pleading may be "considered waived").

***Should Plaintiff fail to file an amended complaint on or before July 21, 2022, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2) and his failure to prosecute in compliance with a court order requiring amendment.*** *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of

///

///

the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: June 21, 2022

                                             Hon. Janis L. Sammartino
                                             United States District Judge